## WASHINGTON RICE vs. GEORGE SIMMONS.

A publication conveying an injurious imputation against another is not *a libel* if made *bona fide* with a view to protect the publisher or the public against a fraud, and containing no more than is necessary for this purpose; but if *malicious*, it is a *libel*. Malice is a question of fact for the jury.

The *declarations* of the defendant *at the time of publication* are evidence as a part of the *res gestae* and to show the *quo animo*.

Motion for a new trial on the ground of *surprise* by the unexpected absence of a material witness, must be founded on an *affidavit* stating the *materiality* and the *surprise*.

ACTION on the case for a libel. Pleas, not guilty and justification.

The narr. laid, with different inuendoes, the following paper, which was proved to have been posted by the defendant at the market house in Wilmington.

" The public are hereby cautioned against receiving from Washington Rice, or John Agnes, a black man, any papers relating to my business, as sundry papers hath been purloined from my store and fell into the hands of the said W. Rice, who hath endeavored to put some of them in claim against me, viz: bills and receipts for grain I had bought and paid for, which was returned to me by the holders when their crop was delivered and I paid for it.

July 22, 1836.        (Signed,)    GEORGE SIMMONS."

The question whether this amounted to a libel was much debated at the bar, and was reserved, on the application of the plaintiff's counsel, for hearing in the Court of Appeals. (See post, June Term, 1838.)

In this argument the plaintiff's counsel contended that a libel was not merely such a publication as tended to bring a man into public hatred, contempt or ridicule; but that any paper published of another which is calculated to lower him in the estimation of his fellow-men, is a libel. And they cited *Johns. Dig.* 305; *Swift's Dig.* 488; 2 *Selw. N. P.* 239, *n*; 3 *Johns. Rep.* 56; 4 *Mass, Rep.* 168: *Croswell's Case, Hamilton's definition*, 4 *Eloq. U. S.*; 2 *Saund. Pl. & Ev.* 325; 4 *Esp. N. P. Cases*, 191, *Delany vs. Jones*; 3 *Eng. Com. Law Rep.* 353, *Brown vs. Croome*, (questions *Delany vs. Jones*;) 7 *Com. Law*

*Rep.* 220; 14 *Ibid*, 245; *Ib.* 491.   And as to damages, 3 *Johns. Rep.* 66; 2 *Wils.* 206; 3 *Wils.* 18; 1 *Harr.* 333; *Tatlow* vs. *Jaquett, Ibid.* 3, 503.

For the defendant it was said, that though the tendency of a publication might be to injure another, it was not libellous unless *malicious*; nor if made on a proper occasion, with a view to protect the publisher against loss; that the damages were merely *compensatory*; and that the court must determine, and not the jury, whether the publication is a libel. 2 *Selw. N. P.* 241; *Chitty's Genl. Prac.* 43, 44; 4 *Taunt.* 354, *Thorley* vs. *Lord Kerry;* 3 *Wils.* 186; 1 *Price Exch. Rep.* 10, 11; 4 *Esp. N. P.* 191, *Delany* vs. *Jones;* 1 *Campb. Rep.* 267.

The case went on before the jury.

A witness was called by the defendant to prove his declarations at the time of writing and publishing the alledged libel; and this was objected to because it would be permitting the party to make evidence for himself. To this it was answered, that these declarations were admissible to show the *quo animo*, which is the test of the action. They are admissible also as a part of the res gestæ. The bills and receipts alluded to in the publication had been lost. The defendant had been informed that they were in the hands of Rice, placed there by Agnew. They were evidences of debt which he had discharged and taken up, and he had a right to caution the public against taking them. Under these circumstances the question is, with what motive did he make the publication, and his declarations at the time are connnected with it, and go to show the quo animo.

*Per Curiam.*—It is to be remarked, first, that the paper relied on as a libel is to be controlled by the circumstances around it. The force of the terms used may be explained by the attending circumstances which show the imputations meant to be conveyed by it, and the quo animo with which it was published. We have already admitted the declarations of the defendant against him for this purpose, and, on this ground, as well as a part of the transaction itself, they are evidence for him. If made under suspicious circumstances, or manufactured for the occasion, they will have no weight with the jury. 1 *Stark. Ev.* 301; 2 *Ibid.* 462; 5 *Term Rep.* 512; 2 *Stark. Ev.* 740.

Evidence admitted.

The *Chief Justice* (J. M. CLAYTON) charged the jury:

That to constitute this publication a libel, malice was necessary. It is not enough that the imputations are false, but they must be malicious. Malice is the essence of the offence, and the existence of malice is always considered a fact for the jury.

The publication of the paper is proved. Whether it amounts to a libel is reserved for future consideration. Supposing that it shall be so determined, and assuming for the present that it does charge the plaintiff with dishonest or immoral conduct, the question now for consideration is, whether such charge was *justified* by the circumstances under which it was made.

The matter for discussion on the reserved point will be, whether the publication charges an immoral or dishonest act by the attempt to put these bills and receipts in suit, not whether Rice attempted so to put them in suit *knowing* them to have been purloined. That is not the charge. The paper will not for a moment allow of such a construction, and we have not permitted that question to be reserved. For though it was said by the plaintiff's counsel that there was an inuendo to that effect in the declaration, this will not raise such a question, for the inuendo cannot enlarge the charge. Its office is merely to carry out and explain, not to extend. The charge, therefore, which the jury are to consider, and which for the present is taken to be libellous, is, that Rice, without knowing whether these evidences of debt had been discharged by Simmons or not, attempted to put them in claim against him. The question will then be, whether a publication making such a charge was justified by the circumstances. Did the defendant make it bona fide to protect himself or the public; or was it made through malice towards the plaintiff? His counsel has contended that it is proved that his store was broken and these papers stolen, or that they had been accidentally lost; that they were afterwards in the plaintiff's hands; and that this publication was only a necessary precaution to shield himself from having to pay them again, or the public from receiving them as subsisting claims upon him. If you think this is so; that the publication was made with the honest intent to prevent these papers from being brought as claims against him, or to caution others from being imposed on by them; and that he published only what was necessary for this purpose, he ought not to be held liable in this action. But if you think that the statement he has made was not necessary to be made in such a publication; and that he went out of his way maliciously to slander the plaintiff; then such a purpose cannot be used as a cloak for the slander, and your verdict ought to be against him. Such was the decision of Lord *Ellenborough* in *Delany* vs. *Jones*, 4 *Esp. N. P. Cases*, 191. The question of good faith is a question for the jury.

Verdict for plaintiff. Damages, $500.

J. A. Bayard and Wales, for plaintiff.

R. H. Bayard, for defendant.

Motion for a new trial on account of the absence of Nelson Cleland, a material witness for the defendant, who having been duly summoned, appeared and answered to his name at the calling of the cause, and then withdrew himself out of the jurisdiction of the court, and thus deprived the defendant of the benefit of his testimony.

This witness was summoned by both parties. He was present when the jury was drawn; and though the first witness called by the plaintiff, he could not be found. An attachment was issued against him at the instance of plaintiff, but he was not taken until the cause was ended. He admitted on his affidavit, that he had gone off intentionally to avoid giving testimony. He thought that his testimony would aid the plaintiff in recovering an unjust verdict, as he did not think the publication had done him any injury, and he therefore determined not to give testimony. He stated a fact which would have been material for the defendant. He did not know that he was summoned by the defendant, or could give that fact in evidence. He denied any intention of being guilty of a contempt of court. He was fined $75.

*R. H. Bayard*, in support of the rule, cited 14 *Johns. Rep.* 112, *Ruggles* vs. *Hall;* 3 *Taunt.* 484; 7 *Johns. Rep.* 306; *Tidd's Pr.* 814; 1 *Price Rep.* 201; 2 *Anstr.* 517.

*Wales* and *J. A. Bayard*, contra, cited 2 *Tidd's Pr.* 816; 2 *New York Dig.;* 7 *Mod.* 156; and insisted that both the materiality of the witness, and the fact that the party was surprised by his absence, ought to be presented by affidavit. That the court could not notice the facts now stated by the witness whilst purging himself of the contempt, to make out this application for a new trial.

*Per Curiam.*—We have doubted much on this motion, and the court has been divided; but on reflection, we have concluded, that to enable the party to get a new trial an affidavit was necessary, so as to put it *beyond a doubt* that the defendant was surprised by the running away of this witness; that is, negativing any *knowledge* on his part of his intention to go away. It may be true that he was perfectly innocent and knew nothing about it; but it would be settling a general rule which might open the door to fraud if we did not require the affidavit. As to the other facts, of materiality, &c., we think that we should be bound to notice what came before us judicially on the attachment of contempt.

Rule discharged.

*R. H. Bayard*, for the rule.
*Wales* and *J. A. Bayard*, contra.